UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEBRA W.[1],

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 18-cv-01727-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Debra W. appeals the decision of the Commissioner of Social Security finding Plaintiff not disabled and ineligible for disability benefits within the meaning of Title II and Title XVI of the Social Security Act. Pending before the Court are Plaintiff's motion for summary judgment, ECF No. 20, and Defendant's cross-motion for summary judgment, ECF No. 21. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion for the following reasons.

## II. BACKGROUND

### A. Age, Education and Work Experience

Plaintiff is 50 years old. AR 41. She has completed eleventh grade. AR 43. She does not have past relevant work. AR 24, 43-44.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**B. Medical Evidence**

On August 18, 2013, Plaintiff was admitted to the emergency room at Washington Hospital Healthcare System ("Washington Hospital"). AR 310. Neal S. Dickler, M.D., the emergency physician noted that Plaintiff admitted to using methamphetamine that morning. AR 312, 319. A psychiatric and examination conducted the same day at Washington Hospital was "negative for memory loss." Plaintiff was oriented to person, place, and time and was awake, alert, and in no acute distress. She had no focal neurological deficit. She had a normal mood and affect, and her behavior, judgment, and thought content were all normal. AR 313-14.

While incarcerated at the Alameda County Santa Rita Jail from September 2013 to June 2014, Plaintiff received mental health treatment from Alameda County Behavioral Health Care Services (hereinafter "BHCS"). On September 25, 2013, Raymond P. Carlson, L.C.S.W., recorded, "Client says that she finds herself not sleeping very well, and then experiencing racing thoughts nocturnally." AR 410. During an October 11, 2013 session, Mcheko Graves-Matthews, M.D., noted Plaintiff was tearful during the session, expressed dysphoria, and was positive for anxiety. AR 408-09. On November 25, 2013, Dr. Graves-Matthews noted that Plaintiff's anxiety stemmed from several motor vehicle accidents, the most serious of which was almost 20 years ago. AR 401. The most recent accident brought flashbacks of the previous ones. AR 401.

On February 7, 2014, Carlson examined Plaintiff and observed her to be calm and centered, open in her communication, linear in her thought process, making good eye contract, and exhibiting good grooming. AR 393. Plaintiff told Carlson that she had read material that gave her insight into her family's dynamics. *Id.* Plaintiff also reported that her psychotropic medication was satisfactory. *Id.* On June 17, 2014, Mohinder Kaur, M.D., diagnosed Plaintiff with PTSD and Amphetamine Dependence. AR 389-90. Dr. Kaur noted that Plaintiff had severe anxiety, increased startle and insomnia. AR 389.

After being released from jail, Plaintiff visited the Sausal Creek Outpatient Stabilization Clinic on July 3, 2014. AR 416. There she was diagnosed with Mood Disorder, Amphetamine Dependence, and Alcohol Abuse. AR 419. The Sausal Creek records also indicate that Plaintiff reported symptoms of insomnia, mood swings with rage, depression and crying spells, racing

thoughts, and impulsive spending habits. AR 420. This same record also documents a history of bipolar disorder. AR 420. In addition, Plaintiff reported one and a half years of meth sobriety. AR 422.

At the request of the Social Security Administration, Plaintiff attended a Consultative Examination conducted by Antoinette Acenas, M.D., on December 1, 2014. AR 437. Dr. Acenas performed a comprehensive psychiatric evaluation. *Id.* Dr. Acenas reported that she reviewed Plaintiff's disability report and did not report that she reviewed any other medical records. *Id.* Plaintiff reported a history of multiple incarcerations over the previous 10 to 15 years due to drug-related charges. *Id.* She reported she had no history of inpatient psychiatric hospitalizations. *Id.* Plaintiff stated that she was capable of performing her personal grooming and hygiene. She did household chores of cooking, cleaning, and laundry, and she socialized with her friends. AR 438. In her report, Dr. Acenas wrote, "The claimant stated that she started abusing alcohol and drugs in her teens and used methamphetamines. She has been in rehabilitation twice. She has been clean and sober for six months." *Id.* Dr. Acenas diagnosed Plaintiff with Bipolar Mood Disorder and Polysubstance Abuse in recent remission. AR 439.

Dr. Acenas also noted that Plaintiff presented with good grooming and hygiene. AR 438. She observed that Plaintiff was friendly and cooperative and somewhat fidgety. *Id.* She noted that Plaintiff presented a coherent and cohesive history of her present illness, did not appear to be experiencing delusions, and that she denied having suicidal or homicidal ideations. *Id.* Plaintiff was able to remember "3/3 objects in three minutes" and "she was able to perform serial 3s." AR 438. Dr. Acenas found Plaintiff met the criteria for diagnosis of Bipolar Mood Disorder and Polysubstance abuse in recent remission. AR 439. Dr. Acenas also found Plaintiff to be completely unimpaired in her functional assessment. *Id.*

On April 3, 2015, Elizabeth Walser, Psy. D., examined Plaintiff for a report by Lesleigh Franklin, Ph.D. AR 446. Plaintiff reported to Dr. Walser that "her life blew up when she was 11 because her father cheated on her mom and the parents abruptly separated." AR 447. Dr. Franklin's report notes that "[i]n her anger and confusion about this situation, Plaintiff began to act out. As a teen, she stopped following rules and began to hang out with kids who used drugs

3

and were sexually active." *Id.* The report also notes Plaintiff "got pregnant at 17 and left school." *Id.* Plaintiff married young and had two children. *Id.* Dr. Franklin diagnosed Plaintiff with Bipolar I Disorder, most recent episode depressed, moderate; Generalized Anxiety Disorder; Amphetamine Use Disorder, in early remission; Alcohol Use Disorder, in early remission. AR 453. Dr. Franklin listed nine procedures administered as a basis for her findings: (1) Clinical Interview; (2) Quality of Life Rating Scale; (3) Wechsler Abbreviated Scale of Intelligence, Second Edition (WASI-II); (4) Repeatable Battery for the Assessment of Neuropsychological Status (RBANS); (5) Trail Making A & B; (6) Miller Forensic Assessment of Symptoms Test (M-FAST); (7) General Symptom Inventory; (8) Beck Anxiety Inventory; and (9) Record Review: Sausal Creek, Axis Health Care; Santa Rita Jail. AR 446.

Dr. Franklin's report also included the results and interpretations of these objective assessments. AR 450-452. Specifically, Dr. Franklin reported that Plaintiff's overall IQ score was 79, placing her in the borderline range. AR 451. Dr. Franklin noted that "[h]er mood has stabilized and her behavior has improved, but [Plaintiff] says she is still struggling with sadness, agitation, nervousness, mood swings, pessimism, and problems concentrating." AR 446. Dr. Franklin also noted that Plaintiff "says she has been off methamphetamines for 4 years and off alcohol for 9 months. She is tested through the probation department and she said she talks to her current therapist about substance abuse." AR 447-48. Dr. Franklin also noted Plaintiff's "anxiety is interfering with her ability to go to outpatient support groups, and this puts her further at risk for relapse." AR 453. At the end of the report, Dr. Franklin concluded that Plaintiff had a number of functional limitations including: (1) a moderate limitation in the ability to follow simple directions; (2) a marked impairment in the ability to follow complex directions; (3) marked difficulty paying attention; (4) moderate difficulties completing tasks timely; (5) moderate trouble getting along with the public and coworkers; (6) marked trouble with authority; and (7) marked difficulties following regular work schedule and punctuality. AR 455.

Natalie Kiff, L.C.S.W., from Axis Community Health ("Axis"), also provided opinion evidence regarding Plaintiff's Bipolar Disorder, Amphetamine dependence and Alcohol Dependence diagnoses on a form dated February 11, 2015. AR 441. Kiff noted Plaintiff is

4

"suffering from major depression – no motivation, fatigue, sleeping too much, irritability or low frustration tolerance. Unable to interact with others without sense of suspicion about intentions due to background of substance use and incarceration." AR 445. She stated Plaintiff's impairments are not caused by intoxication, dependence or withdrawal. AR 441. Kiff wrote that she conducted weekly individual therapy with Plaintiff beginning July 24, 2014. *Id.* Regarding her symptoms, Kiff indicated that Plaintiff is highly anxious, can't sit still, fidgets, jumps around on topics, exhibits loss of concentration, is inattentive, and displays mood lability. *Id.* Kiff indicated that Plaintiff does not have a low IQ or reduced intellectual functioning. *Id.* With regards to the severity of Plaintiff's symptoms and the resulting functional limitations, Kiff indicated that all of Plaintiff's abilities needed to do unskilled work are either markedly or extremely limited. AR 443. She defined a "marked limitation as one that indicates the patient has a substantial loss of ability to function and is unable to perform the activity on a sustained basis in a five day, normal work setting." *Id.* She defined an extreme limitation as one where the patient "retains no useful ability to function in the queried area, and cannot perform this activity at all in a regular work setting." *Id.* Kiff specifically noted that Plaintiff has an extreme limitation in the functional area of concentration, persistence or pace. AR 444.

On August 5, 2014, Plaintiff visited Axis where Sudha Chadalawada, M.D., noted that Plaintiff was presenting with "bipolar." AR 456. On the same date, Plaintiff reported her last drink was one and a half months earlier. AR 457. During the office visit, Plaintiff also reported "difficulty concentrating, feeling down, depressed or hopeless (nearly every day), feelings of guilt, little interest or pleasure in doing things (more than half the days)." *Id.*

Treatment notes from Axis span August 5, 2014 to December 27, 2016. AR 456-686. On May 26, 2015 during a psychotherapy visit at Axis, Kiff diagnosed Plaintiff with amphetamine dependence, unspecified use; unspecified alcohol dependence; and "Bipolar I disorder, most recent episode (or current) depressed, moderate." AR 487. On June 23, 2015, Kiff updated Plaintiff's diagnosis to "Bipolar I disorder, most recent episode (or current), manic, moderate." AR 495. On July 21, 2015, during her psychotherapy appointment with Kiff, Plaintiff reported having two drinks within the past two weeks. AR 510. At the August 18, 2015 psychotherapy

5

appointment with Kiff, her notes include a differential diagnosis regarding Plaintiff's Amphetamine dependence, noting that her dependence was in remission. AR 517. Kiff also observed "Client talks loudly, swings leg back and forth, shifts around in her seat over and over again. Agrees that she might be manic." AR 519. The psychotherapy notes from November 10, 2015, April 19, 2016, and November 8, 2016, show that Plaintiff relapsed on alcohol multiple times. AR 562, 566, 596, and 669. After twenty months of psychotherapy treatment at Axis, Kiff characterized Plaintiff's progress as "minimal." AR 657.

Plaintiff also sought treatment at Community Psychiatry Associates twice in December 2016. AR 701-05. Dr. Finkelstein, M.D. assessed her with Bipolar Disorder, likely PTSD, Anxiety (R/O Panic Disorder), history of Amphetamine Use Disorder and history of Alcohol Use Disorder. AR 701.

On July 21, 2015 State Agency Consultant V. Meenakshi M.D., reviewed the records and concluded that Plaintiff's ability to carry out very short and simple instructions was not significantly limited. AR 96-98. Dr. Meenakshi found Plaintiff's ability to sustain an ordinary routine without special supervision and make simple work-related decisions was not significantly limited. AR 98. Dr. Meenakshi found Plaintiff's ability to maintain socially appropriate behavior and adhere to basic standards of neatness was not significantly limited and concluded she would be best suited to work with minimal social demands and limited public contact. AR 99. He also found Plaintiff had moderate limitations in her ability to understand and remember detailed instructions and to work in coordination with or in proximity to others without being distracted by them. AR 98. He noted: "LCSW who has seen her since 7/14 marks extreme and all her functioning but, mer [medical evidence of record] indicates that cl is functioning better than with extreme restrictions." AR 96.

### III. SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

Plaintiff filed an application for benefits on September 12, 2014. AR 179. She alleged an onset date of October 1, 2001. *Id.* The Social Security Administration denied her application on April 13, 2015. AR 109. Plaintiff filed a Request for Reconsideration on April 17, 2015, which was denied on July 21, 2015. AR 114, 117. Plaintiff filed a Request for Hearing on July 30,

2015. AR 124. The hearing was held on January 17, 2017. AR 36.

### A. Plaintiff's Testimony

When asked why she was unable to work, Plaintiff testified, "I have anxiety and depression really bad to where I sleep probably like 12 hours a day. I don't function well with people." AR 46. She testified that she was awake "every two hours." AR 50. Plaintiff also testified that although she has been in therapy for two years, she goes back to where she was in between appointments. AR 49. She further testified, "I just don't like people. I, I just veer off from them. I don't trust them." AR 48. Additionally, she testified, "Well, I went into treatment. I've tried AA, NA, counseling. I go to a counselor every week." AR 48. "And it seems like it's helping, but you know, after I leave after maybe a day I just feel so down on myself that I can't function again." AR 48. "I've had a therapist that I've had for the last, what, two years." AR 49. When asked if she has maintained sobriety since December 2014 she answered, "I haven't used methamphetamines, but I've drank alcohol." AR 52. She also stated, "I've gone back to AA." *Id.*

On a normal day, Plaintiff testified, "I get up. I maybe drink a cup of coffee, smoke a cigarette and then I go back to sleep. Then I'll get back up. My family will tell me what to do. Sometimes I do it, sometimes I don't and I'll go back to sleep." *Id.* "I don't stay focused on anything." AR 55. When asked if she finishes tasks, she replied, "Not usually. I, I quit halfway through it." *Id.* When asked about her PTSD she stated, "It affects me – my – PTSD affects me at night. And then during the day sometimes like I'll have flashbacks and I just can't function after I think about that." AR 56. Plaintiff testified that she regularly is awakened "three to four times a night." *Id.*

### B. Deanna Sanchez's Testimony

Plaintiff's sister, Deanna Sanchez, testified, "For the last quite a few years, I don't even know how far to go back, but she doesn't focus. She can't stay focused. You have to give her constant direction when asking her to do something." AR 59. Sanchez further testified, "she doesn't know how to function on a daily basis. She sleeps. She sleeps unless you give her direction to do something else. And then it's giving direction and then giving more direction, you know. Like can you get up and, you know, help clean the house." *Id.* The ALJ asked, "Ms.

7

Sanchez, how much has either drug or alcohol played in to this in your opinion?" AR 64. Ms. Sanchez replied, "A lot." *Id.* She then elaborated and said, "Since she's been diagnosed with bipolar, there has been, as far as I know . . . no, like drug use because I think she – and this is what I had, had told the counselor when she had talked to her, whatever." AR 65.

## C. Vocational Expert's Testimony

Abby May, the Vocational Expert, testified that a hypothetical individual with a residual functional capacity to perform less than the full range of medium work, lifting and carrying 50 pounds occasionally, 25 pounds frequently, sitting for six hours, standing for six hours, walking for six hours and "push or pull as much as can lift or carry," a limitation as to "communication, limited to hearing and understanding simple and oral instructions, mental limitation, understand, remember and carry out instructions," limitation to performing simple, routine and repetitive tasks, responding "appropriately occasionally to supervisors, occasionally to coworkers and occasionally to the public," could not find work to similar to that of claimant's previous job. AR 68. The Administrative Law Judge ("ALJ") then asked if there was any other work which such an individual could perform. AR 69. May stated that the hypothetical person could perform some medium jobs that are unskilled, including prep cook, janitorial type work, and grounds keeping. *Id.* The ALJ altered his hypothetical question further by "adding a limitation to respond appropriately to supervisors, coworkers or the public never." *Id.* May testified that with that added limitation, the hypothetical person could not perform Plaintiff's past job or any other work. *Id.*

Plaintiff's representative asked May to refer back to the original hypothetical and asked, "If the hypothetical individual in that particular situation had an additional limitation of what's been described as a marked difficulty in paying attention, meaning that they would be off task 25 percent of the time. Would that person be able to perform either the prep cook, janitorial or grounds keeping positions that you mentioned?" AR 70. May responded, "No, that would be an excessive amount of time off task." *Id.*

## D. ALJ's Decision and Plaintiff's Appeal

On May 3, 2017, the ALJ issued an unfavorable decision. AR 12. Plaintiff filed a timely

8

Request for Review of Hearing Decision/Order on June 30, 2017. AR 178. The Appeals Council denied the request for review in a decision dated January 19, 2018. AR 1. Plaintiff subsequently commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

## IV. STANDARD OF REVIEW

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Id.* (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). A court may not reverse an ALJ's decision because of an error that is harmless. *Id.* at 1111 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

## V. DISCUSSION

### A. Framework for Determining Whether a Claimant Is Disabled

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[2] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since July 28, 2014. AR 18.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: substance abuse disorder, bipolar disorder, anxiety disorder, and depressive disorder. AR 18.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the

---

[2] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

criteria of the diagnosis, she is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 19-21.

Before proceeding to step four, the ALJ must determine the claimant's residual function capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined Plaintiff has the RFC to perform medium work, as defined in 20 C.F.R. section 416.967(c), except she would never respond appropriately to supervisors, coworkers, or the public. AR 21. The ALJ further found that if Plaintiff stopped her substance abuse, she would have the RFC to perform medium work, except she was limited to understanding simple oral instructions and performing simple, routine, repetitive tasks, and she could occasionally respond appropriately to supervisors, coworkers, or the public. AR 27.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined Plaintiff had no past relevant work. AR 24, 29.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, relying on

the vocational expert's testimony, the ALJ further found that if Plaintiff stopped her substance abuse, she would be able to perform jobs existing in significant numbers in the national economy and identified the representative positions of prep cook, Dictionary of Occupational Titles[3] ("DOT") 317.687-010) (unskilled), with 800,000 such jobs in the United States economy; janitor (DOT 381.687-018) (unskilled), with 2,000,000 such jobs in the United States economy; and grounds keeping (DOT 406.687-010) (unskilled), with 800,000 such jobs in the United States economy. AR 29-30. The ALJ found that because the substance abuse disorder was a contributing factor material to the determination of disability, Plaintiff had not been disabled within the meaning of the Act at any time from July 28, 2014 (Social Security Income "SSI" application date) through May 3, 2017 (ALJ decision date). AR 30.

**B.    Plaintiff's Arguments**

Before this Court Plaintiff makes two arguments challenging the ALJ's decision. First, she contends that the ALJ erred by giving less weight to Dr. Franklin's opinion without providing specific and legitimate reasons supported by substantial evidence. Second, she argues that the ALJ erred by discounting "other source" licensed social worker Natalie Kiff's opinion evidence without offering germane reasons. The Court considers each argument in turn.

**1.    Dr. Franklin's Opinion**

Plaintiff argues the ALJ erroneously gave "less weight" to Dr. Franklin's examination report because: (1) she is a psychologist retained by the claimant and was "not subject to the rigorous steps taken by the agency to avoid conflict of interest"; (2) Dr. Franklin's opinion was not consistent with consultative examiner Dr. Acenas; (3) Dr. Franklin's opinion was not consistent with nonexamining state agency consultant Dr. Meenakshi; and (4) "there were no accompanying drug tests to indicate whether or not the claimant was sober when examined." *Id.* at 9.

In response, Defendant argues the ALJ properly weighed conflicting medical-opinion evidence and assessed an RFC he found best comported with the weight of the record as a whole, including Plaintiff's substance-abuse history. Def.'s Mot. at 4. Defendant further argues that the

---

[3] The Dictionary of Occupational Titles is published by the Department of Labor and gives detailed physical requirements for a variety of jobs. *See* 20 C.F.R. § 416.966(d)(1).

12

ALJ provided specific and legitimate reasons explaining how he weighed the evidence and identified substantial evidence in the record supporting his findings. *Id.* at 5.

When an examining source's opinion is contradicted by another doctor's opinion, as is the case here, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting the opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Here, the ALJ explained why he gave less weight to Dr. Franklin's opinion:

> It is noted that there were profound differences between the examination the claimant obtained on her own behalf, and the examination performed by a neutral consultative examiner. While both doctors lack authority to make a suggestion that the claimant is disabled, that being one requiring a legal conclusion reserved for the Commissioner, the undersigned considered the source of both opinions. A physician or psychologist retained by the claimant is not subject to the rigorous steps taken by the agency to avoid a conflict of interest; the report from Lesleigh Franklin, Ph.D., was given less weight in that regard. *See* 20 CFR 416.919i and 20 CFR 416.919q. Furthermore, the opinion of Dr. Franklin was not consistent with that of Dr. Acenas, nor that of state agency consultant Dr. Meenakshi. Finally, there are no accompanying drug tests that indicate whether or not the claimant was sober when examined.

AR 23 (most citations omitted).

Let's start with the supposed conflict of interest, focusing on the regulatory provisions the ALJ cited. 20 CFR 416.919i lists situations in which the Social Security Administration ("SSA") will use a different medical source than the claimant's medical source for a purchased examination. Those situations include when the claimant's medical source prefers not to perform the examination, there are conflicts in the claimant's file that cannot be resolved by going back to her medical source, the claimant prefers to use a different medical source and has a good reason for that, the claimant's medical source has a history of failing to provide complete or timely reports, or the claimant's medical source is unqualified. None of those is applicable here or has anything to do with this case. And the conflicts of interest referred to in 20 CFR 416.919q are the potential conflicts involved when the same physician or psychologist works for the SSA and a state agency at the same time, or the conflict that would inhere if a physician or psychologist participated in the review of a case in which he was also a consulting examiner (i.e., being the judge of his own work). Those types of conflicts also have nothing to do with Dr. Franklin's

13

report.

What the ALJ meant by a supposed conflict of interest is that Dr. Franklin was retained by the claimant, as opposed to the "neutral" (to use the ALJ's term) examiner retained by the SSA, Dr. Acenas. The idea is that a psychologist retained by the claimant is going to be biased in favor of trying to get benefits awarded. However, the Ninth Circuit has held that "[t]he Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (citation and quotation marks omitted). "An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." *Id.*; *see also Reddick*, 157 F.3d at 726-27 (holding that "the purpose for which an opinion is provided [] is not a legitimate basis for evaluating the reliability of the report" and that "the record provides no basis for the ALJ's finding that Social Security consulting examiners Wood and Moseley were more objective than Drs. Charney or Jacobson"). The ALJ's decision to give less weight to Dr. Franklin's opinion because she was retained by the claimant is foreclosed by this clear Circuit precedent.

The ALJ concluded the paragraph about Dr. Franklin's opinion by stating that her opinion conflicted with those of the SSA consulting examiner, Dr. Acenas, and the state agency consultant, Dr. Meenakshi, and that there were no accompanying drug tests that indicate whether or not the claimant had been sober when examined. AR 23. It is unclear if the ALJ meant those assertions to be additional reasons for giving less weight to Dr. Franklin's opinion. The way the ALJ's decision is written makes it look like the reasons for assigning more or less weight to an opinion precede the statement of how much weight the ALJ assigned it, and the remarks that follow are the analysis (if any) after weight has been assigned. *Compare* AR 23 (assigning Dr. Acenas's opinion significant weight, then concluding it was wrong) *with* AR 24 (assigning Kiff's opinion little weight, then conducting no further analysis). This suggests that the ALJ gave less weight to Dr. Franklin's opinion solely because she had been retained by Plaintiff.

In any event, if the remaining statements in the last paragraph of AR 23 were intended to be additional reasons for assigning less weight to Dr. Franklin's opinion, they do not make sense. It is not true that Dr. Franklin's opinion was an outlier, standing in contrast to the united opinions

14

of Dr. Acenas and Dr. Meenakshi. Instead, Dr. Franklin's, Dr. Acenas's and Dr. Meenakshi's opinions all conflicted with each other, as the ALJ himself acknowledged, *id.*, and as the Defendant admits on appeal. Def.'s Mot. at 3 ("One on end of the spectrum" was Dr. Franklin, while "[a]t the other end of the spectrum" was Dr. Acenas, and "[f]alling in the middle ground" was Dr. Meenakshi). It is therefore arbitrary to use the fact of that disagreement to assign less weight to Dr. Franklin's opinion since it could equally well have been a reason to assign less weight to either of the other opinions.

In particular, the fact that Dr. Franklin's opinion differed from Dr. Acenas's does not constitute a legitimate basis to assign less weight to her opinion because the ALJ rejected Dr. Acenas's opinion. Dr. Acenas concluded that Plaintiff had no mental health impairments at all. AR 439. The ALJ stated that he "accorded this opinion significant weight," but then rejected its conclusions. AR 23 ("The undersigned . . . disagrees that the claimant has no impairment from mental health diagnoses."). Dr. Franklin's disagreement with an opinion that the ALJ also rejected cannot logically be a reason for assigning her opinion less weight.

The reference to a lack of accompanying drug tests also does not logically support giving Dr. Franklin's opinion less weight because the same problem was true when Dr. Acenas examined Plaintiff, as the ALJ acknowledged. AR 23. And, of course, Dr. Meenakshi did not examine Plaintiff at all.

Before this Court, the Defendant abandons any defense of the ALJ's stated reasons for giving less weight to Dr. Franklin's opinion, instead arguing that for different reasons the outcome the ALJ arrived at was supported by substantial evidence. Def. Mot. at 3-8. However, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual finding offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). Here, the ALJ's stated reasons for giving less weight to Dr. Franklin's opinion do not pass muster and a remand is appropriate for the ALJ to reconsider his decision free from legal error.

### 2. Natalie Kiff's Opinion

Plaintiff argues that the ALJ also erred by discounting "other source" licensed social worker Natalie Kiff's opinion evidence without offering "germane reasons." Pl.'s Mot. at 11. Plaintiff argues that the ALJ gave little weight to Kiff's opinion because: (1) she did not agree with Dr. Franklin that the claimant had a low IQ; (2) Kiff's opinion was inconsistent with consultative examiner Dr. Acenas; (3) Kiff's opinion was inconsistent with state agency consultant Dr. Meenakshi; and (4) "there were no accompanying drug tests to indicate whether or not the claimant was sober when examined." *Id.* at 12. Defendant argues that ALJ properly discounted Kiff's opinion evidence because it conflicted with the medical-opinion evidence. Def.'s Mot. at 9.

The ALJ may discount testimony from "other sources" if the ALJ "'gives reasons germane to each witness for doing so.'" *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001)). Kiff constitutes an "other source" within the meaning of 20 C.F.R. 416.927(a) because medical sources not listed as an acceptable medical source are considered "other sources." 20 C.F.R. § 416.913(d)(1). Licensed clinical social workers, therapists, public and private social welfare agency personnel, and rehabilitation counselors are not acceptable medical sources. SSR 06–03p; *see also* 20 C.F.R. § 416.913(d).

The ALJ explained his decision to give little weight to Kiff's opinion as follows:

> The claimant provided an opinion from licensed social worker Natalie Kiff. A social worker is not an acceptable medical source and only acceptable medical sources can give a medical opinion or make a diagnosis. Other sources, such as chiropractors, physical therapists, nurse practitioners, or social workers, may be used only to show the severity of the claimant's impairments and how they affect the individual's ability to function. It was the opinion of the social worked that the claimant had marked or extreme limitations in every functional domain. However, the social worker did not agree with Dr. Franklin that the claimant had a low IQ. The opinion was not consistent with that of Dr. Acenas, nor that of state agency consultant Dr. Meenakshi. There were also no accompanying drug tests that indicate whether or not the claimant was sober when examined. The undersigned gave the opinion of the social worked little weight.

AR 24.

Let's break this down. First, the ALJ said that "other sources" can only be used to show

the severity of the claimant's impairments and how they affect her ability to function. Then he said that Kiff's opinion was that Plaintiff has marked or extreme limitations in every functional domain. So, that can't be a germane reason for giving her opinion little weight because her opinion concerns the very subject the ALJ just said an other source can opine on.

Second, the ALJ said that Kiff did not agree with Dr. Franklin that Plaintiff had a low IQ. Kiff filled out a mental impairment questionnaire and checked "No" in response to question 9, which asked "Does your patient have a low IQ or reduced intellectual functioning?" AR 441. Dr. Franklin concluded that Plaintiff's "overall IQ score was 79 placing her in the 8th percentile which is on the borderline range. Due to subtest variability, this score should be interpreted with caution." AR 451. It's not clear that there is any real conflict between Kiff and Dr. Franklin on this point. Further, given the ALJ's finding that Plaintiff's impairments are substance abuse disorder, bipolar disorder, anxiety disorder and depressive disorder, AR 18, even if there is a slight difference between Kiff's opinion that Plaintiff does not have a low IQ and Dr. Franklin's opinion that "should be interpreted with caution" that her IQ is "on the borderline range," it is not germane.

Third, the ALJ explained that Kiff's opinion was not consistent with Dr. Acenas's or Dr. Meenakshi's. As noted above, because the ALJ rejected Dr. Acenas's conclusions, Kiff's disagreement with Dr. Acenas is not a germane reason to assign little weight to her opinion. In addition, the remand to reconsider the weight to be given to Dr. Franklin's opinion requires a remand concerning Kiff's opinion as well. As noted above, Dr. Franklin, Dr. Acenas and Dr. Meenakshi all gave conflicting opinions, and the Court has determined that the ALJ's reasons for discounting Dr. Franklin's opinion do not survive scrutiny. Kiff's opinion, of course, is more similar to Dr. Franklin's. Without a legally valid reason for discounting Dr. Franklin's opinion, the ALJ's decision to also discount Kiff's opinion because it is contradicted by the opinions Dr. Franklin disagreed with is arbitrary. Stated another way, if Dr. Franklin's, Dr. Acenas's and Dr. Meenakshi's conflicting opinions all receive the same weight, then it is arbitrary to discount Kiff's opinion simply because it contradicts Dr. Acenas's or Dr. Meenakshi's – the ALJ could just as easily attach great weight to Kiff's opinion because it is similar to Dr. Franklin's. On remand the

ALJ will need to decide how much weight to give to Dr. Franklin's opinion based on legally valid reasons, and until that analysis is performed, the fact that Kiff disagreed with Dr. Acenas and Dr. Meenakshi is not a germane reason to assign little weight to her opinion.

Fourth, the ALJ stated that there were no accompanying drug tests that indicate whether Plaintiff was sober at the time Kiff examined her. However, that was true for all of the examining reports and is not a germane reason to assign less weight to Kiff's in particular.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion, **DENIES** Defendant's motion, and **REMANDS** this case for further proceedings. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: March 25, 2019

THOMAS S. HIXSON
United States Magistrate Judge